Case 3:22-cv-00275   Document 19   Filed on 07/18/23 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
July 18, 2023
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

### GALVESTON DIVISION

No. 3:22-cv-275

MATTHEW THOMPSON, *Plaintiff*,

v.

CITY OF MONT BELVIEU, *ET AL.*, *Defendants*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Dkts. 9, 10, 11. The court will grant the motions to dismiss the federal claims and remands any remaining claims.

## I. Background

The plaintiff, Matthew Thompson, wants to build a multipurpose shed on his property in Mont Belvieu. Dkt. 5 ¶ 12. Thompson's homeowners' association approved of him doing so, but he did not apply for a building permit from the city before beginning construction in 2021. *Id.* ¶¶ 14, 16.

When Mont Belvieu officials discovered Thompson's construction, they informed him that he needed a building permit. *Id.* ¶ 16. Thompson immediately halted the project and submitted a permit application. *Id.*

In his application, Thompson included architectural plans, a property survey, and other required documents. Dkts. 5 ¶ 17; 5-2 at 7–21. But the application did not include wind-load design criteria, and the architectural plans were not prepared by a Texas-registered design professional. Dkt. 5 ¶ 18. The Mont Belvieu city planner, Kenneth Barnadyn, informed Thompson that though he approved his application, the city would not issue a building permit until Mont Belvieu building officials approved it. Dkt. 5-5 at 8. Adam Artimez and Jose Rodriguez—the Mont Belvieu building official and building inspector respectively—ultimately did not approve the application, telling Thompson that he still had to submit architectural plans and other construction documents prepared by a Texas-registered design professional. Dkts. 5 ¶ 18; 5-5 at 18.

In February 2022, Artimez and Slade Thorton—the Mont Belvieu code-enforcement officer—visited Thompson at his home to discuss his permit request. *See* Dkt. 5 ¶ 22. Thompson called the police, who interrupted the encounter. *Id.* ¶¶ 21–23. About 30 minutes later, Artimez and Thornton left. *Id.* ¶ 23.

About a two and a half weeks later, Mont Belvieu sent Thompson an email notifying him that his permit application had been approved.¹ Dkts. 5 ¶ 29; 5-4 at 4–8. Thompson paid for the permit and printed the corresponding invoice. Dkt. 5-4 at 4–8. The next day, Artimez and Thorton, accompanied by two Mont Belvieu police officers, visited Thompson's home again. Dkt. 5 ¶ 30. The defendants explained that Mount Belvieu had granted Thompson's permit by mistake and that they were revoking it for the same reasons they denied his initial application. *Id*. The defendants also refunded the money Thompson paid for the permit. *Id*.

Two months later, Thompson sued Artimez, Thornton, Rodriguez ("the city officials"), as well as Mont Belvieu, in state court as a *pro se* plaintiff. Dkt. 1-2. The defendants removed when Thompson amended his complaint to include federal claims. Dkt. 1.

In his amended complaint, Thompson asserts violations under 34 U.S.C. § 12601 (official misconduct) and 42 U.S.C. § 12203 (prohibition against retaliation and coercion), as well as numerous state-law claims. Dkt. 5. And construing Thompson's claims broadly, the court also presumes that he alleges a general takings claim under the Fifth and Fourteenth

---

¹ Nothing in the record clearly indicates whether the permit was issued by a person or as the result of an automated process. For simplicity, the court generally refers to Mount Belvieu as having issued the building permit.

Amendments pursuant to 42 U.S.C. § 1983. *See generally id.* The defendants have moved to dismiss. Dkts. 9, 10, 11.

## II. Legal Standard

### A. Rule 12(b)(1)

Rule 12(b)(1) requires dismissal if the court "lacks the statutory or constitutional power to adjudicate the case." *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307 (5th Cir. 2021) (quoting *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). Federal courts have jurisdiction over a claim between parties only if the plaintiff presents an actual case or controversy. U.S. Const. art. III, § 2, cl. 1; *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001). "The many doctrines that have fleshed out that 'actual controversy' requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper— and properly limited—role of the courts in a democratic society.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

The party asserting jurisdiction bears the burden of proof. *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021). To test whether this burden is met, a court may rely upon: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). The court "should consider the Rule 12(b)(1) jurisdictional attacks before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). It may ensure that it has subject-matter jurisdiction, "sua sponte if necessary." *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020) (en banc) (quotation omitted).

### B. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The claim is facially plausible when the well-pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* "The court does not 'strain to find inferences favorable to the plaintiffs' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions.'" *Vanskiver v. City of Seabrook*, No. CV H-17-3365, 2018 WL 560231, at *2 (S.D. Tex. Jan. 24, 2018) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

Naked assertions and formulaic recitals of the elements of the cause of action will not suffice. *Iqbal*, 556 U.S. at 678. Even if the facts are well-pleaded, the court must still determine plausibility. *Id.* at 679. "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio,* 444 F.3d 417, 421 (5th Cir. 2006).

### C. *Pro Se* Litigants

The court liberally construes a *pro se* pleading and holds it to a "less stringent standard" than one drafted by lawyers. *Mendoza-Tarango v. Flores*, 982 F.3d 395, 399 (5th Cir. 2020*).* Though courts give *pro se* litigants leniency, the plaintiff must still plead facts suggesting a plausible claim. *See Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019); *see also Smith v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 735 F. App'x 848, 851 (5th Cir. 2018) (per curiam). Conclusory allegations and legal conclusions will not suffice. *Smith*, 735 F. App'x at 851.

### III. Analysis

The defendants have asked the court to dismiss Thompson's presumed § 1983 claim as unripe under Fed. R. Civ. P. 12(b)(1). *See* Dkts. 9 ¶¶ 18–26; 10 ¶¶ 18–26; 11 ¶¶ 18–26. For Thompson's remaining federal claims, the defendants generally argue that they are not plausible under Fed. R. Civ.

P. 12(b)(6).[2] Dkts. 9 ¶¶ 27–30; 10 ¶¶ 27–36; 11 ¶¶ 30–36. The court agrees and will grant the defendants' motions to dismiss all federal claims. The court will remand any remaining state claims.

### A. Takings Claim

The spirit of Thompson's complaint is that he was harmed by the application of onerous property regulations. Though not specifically pleaded, Thompson essentially alleges a regulatory taking under the Fifth Amendment. But federal courts may not hear such claims if they are unripe. *See Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307 (5th Cir. 2021); *see also Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008). To the extent that Thompson alleges a regulatory taking, the court dismisses the claim for lack of ripeness.

Ripeness is a prerequisite to subject-matter jurisdiction meant to ensure that "the harm asserted has matured sufficiently to warrant judicial intervention." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 267 (5th Cir. 2015) (quotations omitted); *see also Sureshot Golf Ventures,*

---

[2] The defendants make these contentions as part of their qualified-immunity and municipal-liability arguments. Dkts. 9 ¶¶ 27–30; 10 ¶¶ 27–36; 11 ¶¶ 30–36. Thompson responded to these arguments in his response. Dkt. 16 at 1–2. Because the defendants have moved to dismiss on the grounds that Thompson has failed to adequately establish such statutory violations, the court may analyze such arguments independent from qualified immunity and municipal liability. *See Middaugh v. InterBank*, 528 F. Supp. 3d 509, 548 (N.D. Tex. 2021).

*Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 239 (5th Cir. 2018). Accordingly, the court primarily considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987).

Generally, a case is ripe if the "remaining questions are purely legal ones" and unripe if "further factual development is required." *Id.* at 587; *see also Total Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325, 333 (5th Cir. 2017). In other words, the case must be based on a fully developed factual situation rather than contingent future events that may not occur. *See Dahl v. Village of Surfside Beach*, No. 22-40075, 2022 WL 17729411, at *2 (5th Cir. Dec. 16, 2022); *see also New Orleans Pub. Serv.*, 859 F.3d at 587.

The ripeness analysis of a regulatory-takings claim involves a more specific inquiry, but the standard is essentially the same. *See Pakdel v. City & County of San Francisco.*, 141 S. Ct. 2226, 2228 (2021). A regulatory-takings claim is not ripe until the government has reached a final decision or position regarding the property and applicable regulations. *Id.* For a decision to be final, there must be no question about how the regulations apply to the property in question. *Id.* This standard mirrors the general ripeness standard

because until the government reaches a final decision, any injury stemming from the regulations is speculative. *See Dahl*, 2022 WL 17729411, at *2.

A governmental decision is generally not final if the plaintiff has "ignored or abandoned some relevant form of review." *Beach v. City of Galveston*, No. 21-40321, 2022 WL 996432, at *2 (5th Cir. Apr. 4, 2022) (per curiam); *see also Urb. Devs. LLC v. City of Jackson*, 468 F.3d 281, 293 (5th Cir. 2006). While a plaintiff does not have to exhaust all administrative procedures to show finality, a regulatory-takings claim may be unripe if "avenues still remain for the government to clarify or change its decision." *Pakdel*, 141 S. Ct. at 2231. For example, in *Beach*, the district court dismissed a plaintiff's regulatory-takings claim as unripe because the plaintiff did not appeal the government's regulatory decision to the city council, as allowed by city ordinance. *Beach*, 2022 WL 996432, at *3.

Mont Belvieu's local ordinance allows any person aggrieved by the decisions of code or building officials to appeal those decisions to the city council. Dkt. 11-1 at 32–33. Thompson did not appeal the denial of his permit application. So, the alleged injury is contingent on a future denial by the city council, which is not certain to occur. Furthermore, there is no finality because avenues remain for the government to change or clarify its position regarding Thompson's property and the applicable regulations.

In response, Thompson argues that the claim is ripe because he has engaged in extensive correspondence with Mont Belvieu officials to resolve the regulatory issues. Dkt. 6 at 1. This correspondence does not show finality because the city council has the final say regarding property regulations, not Mont Belvieu's building and code officials. *See* Dkt. 11-1 at 32–33. Thompson's takings claim is not ripe. Accordingly, this court has no jurisdiction to hear it and grants the defendants' motions under Rule 12(b)(1).

### B. ADA Claim

In his complaint, Thompson generally alleges claims under the Americans with Disabilities Act ("ADA") for discrimination, *see* 42 U.S.C. § 12132, and retaliation and coercion, *see id.* § 12203. Dkt. 5 ¶ 64 (a) (b). Specifically, Thompson alleges that the defendants (1) interfered with his private endeavors and the enjoyment of his property by denying or revoking his building permit, (2) coerced him by threatening to tear down his shed, and (3) intimidated him by showing up at his home on multiple occasions. *Id.*

A plaintiff alleging a violation of Title II of the ADA must show that he was excluded from or denied services or programs for which the state or public entity is responsible because of the plaintiff's disability. *Guth v. Wolfe*,

No. 4:17-CV-01100, 2017 WL 4457587, at *5 (S.D. Tex. Sept. 15, 2017) (citing *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). Such services or programs include the issuance of building permits. *See id.* Similarly, a claim under Title IV requires a showing of coercion, intimidation, or interference resulting from an individual's exercise of rights under the ADA. 42 U.S.C. § 12203.

Thompson's complaint does not plausibly suggest discrimination, interference, coercion, or intimidation. Mont Belvieu adopted the 2018 version of the International Residential Code ("IRC") as part of its municipal ordinances. Dkt. 11 at 10–11. The IRC and other Mont Belvieu ordinances (1) required Thompson to submit construction documents sealed by a Texas-registered design professional, (2) authorizes the revocation of erroneously issued permits, (3) authorizes city officials to conduct inspections for the administration and enforcement of the building code, and (4) authorizes the city attorney to correct and remove code violations. Dkts. 11-1 at 2, 32, 33; 11-2 at 1–9; Int'l Residential Code R. 104, 109 (Int'l Code Council 2018). As Thompson admits that he did not submit documents prepared by a registered design professional, Dkt. 5 ¶ 17, the defendants had the authority to revoke his permit. Dkt. 11-2 at 7. The defendants were similarly authorized to warn Thompson of the potential consequences of his code violations and

to conduct inspections to ensure code compliance. Dkts. 11-1 at 2, 6; Int'l Residential Code R. 104.

Accepting all of Thompson's allegations as true, there are no factual allegations in the complaint suggesting that the city officials did anything more than enforce the municipal code. Furthermore, while Thompson states that he has a disability, there are no facts in the complaint suggesting that the challenged conduct was related to his disability. The mere presence of a disability does not transform otherwise lawful conduct into discrimination or retaliation. *See Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 690 (5th Cir. 2017) (holding that the plaintiff must plausibly allege that "such discrimination is by reason of his disability"). Accordingly, the court finds that the defendants did not violate or interfere with Thompson rights under the ADA and dismisses any ADA claims arising from his complaint.

### C. Official-Misconduct Claim

Thompson also alleges that the defendants violated 34 U.S.C. § 12601. But § 12601 refers to the deprivation of rights and privileges by law-enforcement officers or governmental officials with responsibility for the administration of juvenile justice. *See* 34 U.S.C. § 12601(a). As Thompson's alleged injury is in no way related to juvenile justice, he cannot state a claim under § 12601. Furthermore, the statute only allows the Attorney General to

bring a civil action under § 12601(b)—not private citizens. *Id.* § 12601(b). Thompson's § 12601 claim plainly fails as a matter of law and fact.

\* \* \*

For the foregoing reasons, the court grants the defendants' motions and dismisses Thompson's federal claims without prejudice. Dkts. 9, 10, 11. The court declines to exercise supplemental jurisdiction over any alleged violations under Texas law. *See* 28 U.S.C. § 1367(c)(3). It therefore remands what remains of this action to the 344th Judicial District Court of Chambers County. All pending motions before this court are denied as moot.

Signed on Galveston Island this 18th day of July, 2023.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE